UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No:

| | |
|---|---|
| H.B. BROOKS INTERNATIONAL, INC. d/b/a NETWATCH NORTH AMERICA | ) |
|     Plaintiff | ) |
| v. | ) |
| ROYAL SUN FARM LLC, | ) |
| ROYALSTON FARM LLC, | ) |
| ROYAL SUN CANNABIS LLC, and | ) |
| DAMON SCHMIDT | ) |
|     Defendants | ) |
| GFA FEDERAL CREDIT UNION | ) |
|     Trustee | ) |

## COMPLAINT

## INTRODUCTION

The Plaintiff, H.B. Brooks International, Inc. d/b/a Netwatch North America, seeks to recover damages for the Defendant's, Royal Sun Farm LLC's, breach of contract in failing to pay for use of Plaintiff's video surveillance equipment, and for fraud.

## PARTIES

1. The Plaintiff, H.B. Brooks International, Inc. d/b/a Netwatch North America ("Netwatch"), is a company with a principal place of business in California.

2. The Defendant, Royal Sun Farm LLC, ("Royal Sun"), is a company with a principal place of business at 69 Gardner Road, Hubbardston, MA 01452.

3. The Defendant, Royalston Farm LLC, is a company which, upon information and belief, a has a principal place of business at 69 Gardner Road, Hubbardston, MA 01452.

4. The Defendant, Royal Sun Cannabis LLC is a company which, upon information and belief, a has a principal place of business at 69 Gardner Road, Hubbardston, MA 01452.

5. The Defendant, Damon Schmidt ("Mr. Schmidt"), is an individual residing at 130 South Royalston Road, Royalston, MA 01368.

6. The Trustee, GFA Federal Credit Union, does business in Massachusetts and holds or held funds of the Defendants.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §1332 as there is a diversity of Citizenship between the Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00.

8. Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b)(2) as Netwatch has a branch office in Newton, Massachusetts, from which a substantial part of the events giving rise to this complaint occurred in this District.

9. Neither of the Defendant companies have any members who reside in the same state as any member of Netwatch. Netwatch has no members who are residents of Massachusetts, and all of the members of the Defendant companies are residents of Massachusetts.

## FACTS

**A. Facts Related to the Contract Between the Parties**

10. Royal Sun is in the business of growing and selling marijuana wholesale. Mr. Schmidt is the owner of Royal Sun.

11. On March 28, 2021, Royal Sun entered into a Managed Service Agreement with Netwatch whereby Royal Sun agreed to pay for Plaintiff's installation of video surveillance equipment, including security cameras and other equipment (the "security cameras" or "cameras") that would be used to monitor Royal Sun's property. Royal Sun further agreed to pay for the right to use such security cameras for a period of five years, and also agreed to pay for Netwatch's services in actively monitoring, through the security cameras, Royal Sun's property for five years. On March 22, 2023, Royal Sun submitted a Change Order related to the Managed Service Agreement. The Managed Service Agreement and Change order are referred to collectively as the "Agreement". A copy of the Agreement is attached as Exhibit 1.

12. Royal Sun breached the terms of the Agreement by failing to make payment when due. As of July 27, 2023, the past due balance that Royal Sun owes under the Agreement is

$125,620.02. Under section 12.4.1 of the Agreement, Netwatch is entitled to accelerate the remaining balance of the five-year term that the Agreement covers. The remaining balance for the term is $329,501.16. In total, Royal Sun owes Netwatch $455,121.18 plus interest and costs.

13. Netwatch provided notice to Royal Sun, pursuant to the Agreement, that Royal Sun was in default under the Agreement. Royal Sun has to date not cured its default.

14. Under section 12.4.2 of the Agreement, Royal Sun is not permitted to keep the equipment in the event of its default, and is required to return the equipment to Netwatch. To date, Royal Sun and Mr. Schmidt remain in wrongful possession of the equipment and refuse to return it.

**B. Facts Related to the Defendants' Fraud**

15. Under the regulations of the Cannabis Control Commission, 935 CMR 500.110 et. seq. (the "regulations"), all businesses selling marijuana are required to have an adequate security system in place to prevent theft or diversion of marijuana and to prevent unauthorized intrusion on the premises. The regulations require installment of video cameras in all areas that may contain marijuana or vaults or safes for the purpose of securing cash, at all points of entry and exit and in any parking lot which shall be appropriate for the normal lighting conditions of the area under surveillance.

16. The Defendants rented the equipment from Netwatch in order to be in compliance with the regulations, but never intended to make payment for the equipment.

17. During the appropriate 2.5 year since the parties entered into the Agreement, the Defendants made only one payment of $8,000.00, and even that payment was made only after a long period of Netwatch expending significant time in trying to obtain payment. The only reason that the Defendants made this payment was because they wanted Netwatch to turn back on the security cameras.

18. At the time the parties entered into the Agreement, Mr. Schmidt knew that neither he nor Royal Sun would be able to make payment. On July 28, 2023, Netwatch sent a draft complaint to Mr. Schmidt letting him know that they would be filing it if acceptable payment arrangements were not made within ten days. The complaint contained a count to attach funds that Royal Sun held at GFA Federal Credit Union ("GGA"). Netwatch knew that Royal Sun had an account there because the one time that Royal Sun made a payment to Netwatch which cleared, the payment was made through a wire from an account at GFA. See Exhibit 2 for information on the wire and also a copy of a check

from Royal Sun which, as discussed below, was returned for being drawn on an account with insufficient funds. Mr. Schmidt, after receiving the complaint, sent an email to Joseph Perl, counsel for Netwatch, saying "we don't have any accounts at GFA". See Exhibit 3 for a copy of the email from Mr. Schmidt. In a subsequent call between Mr. Perl and Mr. Schmidt, Mr. Schmidt informed Mr. Perl that Royal Sun's accounts were shut down because Royal Sun bounced <u>40 to 50</u> checks drawn on GFA accounts. See Exhibit 4, Affidavit of Joseph Perl.

19. At the time Royal Sun entered into the Agreement with Netwatch, Royal Sun was insolvent and had no ability to pay Netwatch. Mr. Schmidt knew this, but induced Netwatch to provide Royal Sun with security cameras anyway calculating that it would be difficult for Royal Sun to get the security cameras back when he could prevent their access to the property.

20. Under the terms of the Agreement, Netwatch, who has remote access to the security cameras, is permitted to shut off the security cameras remotely in the event of Royal Sun's default. After Royal Sun went into default, Mr. Schmidt shut off Royal Sun's internet access in order to try and prevent Netwatch from shutting off the security cameras remotely. Only through subsequent efforts and technical work was Netwatch still able to turn off the cameras.

21. At a time when Royal Sun was in default under the Agreement, and when the security cameras were shut off, members of the Cannabis Control Commission came to inspect Royal Sun's property, which included an inspection to make sure that Royal Sun had security cameras in place. Mr. Schmidt defrauded the Cannabis Control Commission by showing them the security cameras in place, but did not tell them that the cameras weren't actually working.

22. Mr. Schmidt, in order to shield assets from creditors, has created three separate entities with similar names, all in the Cannabis business: Royal Sun Farm LLC, Royalston Farm LLC, and Royal Sun Cannabis LLC.. See Exhibit 5. The three entities are a common enterprise, and each is the alter ego of the other. It appears that Mr. Schmidt owns at least two other companies, Waltham Cannabis Inc. and Tempest, Inc., which are also part of the same common enterprise, and Netwatch may, after discovery, move to amend the Complaint to add these companies and other companies run by Mr. Schmidt.

23. Royal Sun is the alter ego of Mr. Schmidt. Royal Sun is undercapitalized and is used by Mr. Schmidt to commit fraud upon creditors. Royal Sun does not follow corporate formalities, and does not comply with the regulations in place in the Cannabis business

which were designed to keep the public safe.

24. Mr. Schmidt made multiple promises to Netwatch to make good on Royal Sun's delinquent payments, but on each occasion he broke his promise. See Exhibit 6 for multiple emails exchanged between Mr. Schmidt and Netwatch where Mr. Schmidt continuously makes promises to pay his past due balance. In particular, on April 12, 2023, Mr. Schmidt said, in promising to make a payment of $42,000.00 for past due amounts that were long overdue: "I will have this paid by the end of next week with a wire as we we finally have money we have been waiting for coming in." Id. In a similar vein, on July 28, 2023, Mr. Schmidt wrote an email to Netwatch stating: "We have about 15,000 vapes to move. What do you think about $3k a week every Monday starting on August 7th? Then we can change that to $5k a week come October 1st and then eventually we will get caught up." Id.

25. In January of 2023, Mr. Schmidt sent Netwatch a check for $18,823.27 to pay a portion of his past balance. Netwatch's bank returned the check for having been drawn on an account with insufficient funds. After sending the requisite notices to Mr. Schmidt, Netwatch intends to amend the Complaint to add a count against Mr. Schmidt for violation of G.L. Ch. 93 § 40A (the "Bad Check Statute").

26. After Mr. Schmidt, on July 28, 2023 proposed to pay his past balance at $3,000.00 a week beginning on August 7, 2023, and then $5,000,00 per week beginning on October 1, Exhibit 6, Mr. Schmidt, through counsel, Joseph Connors, pushed the date back for the first $3,000.00 payment to August 10, 2023, and said that this could be paid by bank check sent to Mr. Perl's office. See Exhibit 4, Affidavit of Joseph Perl and Exhibit 6 for copies of the emails relating to this recent promise to begin making payments. Mr. Perl, not wanting to receive another check that would bounce or be further delayed in taking legal action, asked that Mr. Schmidt confirm, by no later than Monday, August 7, that this payment would be made by either wire transfer or direct deposit on August 10 so that Netwatch could check to see that the payment went through. Exhibit 7. Mr. Schmidt has to date not confirmed that he would be making the payment by wire or direct deposit.

27. Mr. Schmidt appears to own multiple properties in Massachusetts, including properties located on Daniels Drive in Bedford, multiple units on Fitzwilliam Road in Royalston, and properties on South Royalston Road in Royalston. See Exhibit 7. Mr. Schmidt is likely leasing most of these properties to tenants. Despite access to significant resources, Mr. Schmidt has chosen to keep Royal Sun insolvent and harm creditors by delivering 40-50 bad checks to creditors.

**CAUSES OF ACTION**

## COUNT 1. BREACH OF CONTRACT

28. Royal Sun defaulted under the Agreement that it had with Netwatch by failing to pay for the security monitoring cameras and for Netwatch's services, and Netwatch sustained damages as a result.

29. As a result of its default, Royal Sun owes Netwatch, as of July 27, 2023, $125,620.02 for past rental and service fees for the security cameras, and $329,501.16 for the accelerated future balance.

## COUNT. 2 CORPORATE DISREGARD

30. The preceding allegations of this complaint are incorporated herein.

31. The Defendants, Damon Schmidt, Royal Sun Farm LLC, Royalston Farm LLC, and Royal Sun Cannabis LLC are engaged in a common enterprise, whereby as a matter of equity each and all should be held jointly and severally responsible for the debts of the others, including all amounts owed to Netwatch. Characterized differently, the Defendants are all "alter egos" of each other.

32. The Defendants commingle and/or intermingle their moneys, accounts, assets, finances and business, and use employees and agents of one to provide services to the others.

33. The Defendants fail to respect the separate legal status of each as separate persons or entities, but rather operate as a single common enterprise.

34. The Defendants operate in this fashion so as to hinder, delay and defraud their creditors, including the Plaintiff.

35. As a result, this Court as a matter of equity, should determine that all of the Defendants operate as a common enterprise and are jointly and severally liable to Netwatch for all amounts due for all claims that Netwatch has against Royal Sun.

## COUNT 3. BREACH OF CONTRACT: Breach of Settlement Agreement

36. The parties had a partial settlement agreement whereby Mr. Schmidt was to begin making payment of $3,000.00 per week beginning August 7, 2023, and was to continue making payments of $5,000.00 per week on October 1, 2023 to cure his past balance. The Defendants breached the agreement by failing to make payment when due.

### COUNT 4. UNJUST ENRICHMENT

37. Netwatch provided a benefit to Royal Sun by providing Royal Sun with the security cameras and security services, and Netwatch has reasonable expectation of payment as a result.

### COUNT 5. CONVERSION

38. Mr. Schmidt and Royal Sun are exercising wrongful dominion and control over the security cameras which belong to Netwatch, and Netwatch has been damaged as a result.

### COUNT 6. FRAUD

39. Mr. Schmidt entered into the Agreement with Netwatch knowing that he had no intent that Royal Sun would make payments to Netwatch voluntarily under the Agreement. Mr. Schmidt further intended to keep Royal Sun insolvent during the time period of the Agreement, and Mr. Schmidt's fraud on Netwatch was part of a broader scheme to defraud the public as is evidenced by the fact that the Defendants delivered so many bad checks that their accounts at GFA were involuntarily closed by GFA. Netwatch was damaged as a result in the amount of $455,121.18.

### COUNT 7. VIOLATION OF G.L. CHAPTER 93A

40. The above described acts constitute deceptive business practices entitling Netwatch to triple damages and Attorneys fees as a result.

### COUNT 8. DECLARATORY JUDGMENT/REPLEVIN

41. The Defendants are in wrongful possession of the security cameras and other equipment that Netwatch provided them with, and have refused to return the security cameras to Netwatch. Netwatch seeks an order that the Defendants promptly return the security cameras and other equipment owned by Netwatch.

### COUNT 9. TRUSTEE PROCESS

42. Netwatch seeks an attachment by trustee process on all accounts held by Royal Sun at GFA Federal Credit Union, as well as any other bank later discovered, until all amounts owed to Netwatch are paid in full.

### COUNT 10. RECEIVERSHIP

The Plaintiff seeks the appointment of a receiver to prevent dissipation of the Defendants assets pending this litigation, and to take charge of the Defendants' business in order to pay the debts of the Defendants.

WHEREFORE, the Plaintiff seeks that the Court:

1) Enter judgment against the Defendant, Royal Sun Farm LLC, in the amount of $455,121.18 with triple damages, attorneys fees, interest, and costs;

2) Enter judgment ordering that GFA Federal Credit Union, and any other bank where the Defendants hold funds, be charged as trustee for all amounts held for the Defendants until the amount due to the Plaintiff is paid in full.

3) Order the Defendants to return the Plaintiff's the security cameras and all other property of the Plaintiff that the Defendants are holding.

4) Appoint a receiver over the Defendants business in order to pay the debts of the Defendants.

Respectfully Submitted,

/s/ Joseph Perl
Attorney for Plaintiff
B.B.O. 680509
203 Arlington St., Suite 2
Watertown, MA 02472
781-704-7047
August 7, 2023