**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Civil Action No: 4:23-cv-11800-MRG

| | |
|---|---|
| H.B. BROOKS INTERNATIONAL, INC. d/b/a NETWATCH NORTH AMERICA | ) |
| Plaintiff | ) |
| v. | ) |
| ROYAL SUN FARM LLC, | ) |
| ROYALSTON FARM LLC, | ) |
| ROYAL SUN CANNABIS LLC, and | ) |
| DAMON SCHMIDT | ) |
| Defendants | ) |
| GFA FEDERAL CREDIT UNION | ) |
| Trustee | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT**

Plaintiff, H.B. Brooks International, Inc. d/b/a Netwatch North America ("Netwatch"), submits this Memorandum in Support of their Motion for Contempt based on the Defendants', Damon Schmidt and Royal Sun Farm LLC, failure to comply with this Court's Order of April 19, 2024 requiring the Defendants to, within ten days, return the equipment that Netwatch Installed for Royal Sun the "Equipment"). See Exhibit 1.

**FACTS**

The Equipment that the Court ordered returned included 3 video recorders on Royal Sun's property that are owned by Netwatch, which Netwatch was leasing to Royal Sun but for which Royal Sun had not been paying for (the "Recorders"). Mr. Schmidt is the owner of Royal Sun. The Recorders record video footage captured by video surveillance cameras on Royal Sun's property which were also installed by Netwatch. Page 2 of Exhibit 1 has a list of the Equipment that the Court ordered Mr. Schmidt and Royal to return. The Recorders are included on that list. They are listed as "Video Gateway Unit" which shows two units and a "Hikivision Unit" which

shows one unit. See Exhibit 1.

The Court at multiple hearings gave Mr. Schmidt stern warnings that he needed to return the Equipment. Specifically, Judge Guzman said at the hearing on April 19, 2024 that the Court would not take it lightly if Mr. Schmidt didn't comply with the Court's Order. Mr. Schmidt was warned another time at a subsequent hearing held on September 26, 2024 regarding the need to comply with the Court's Order. Mr. Schmidt has continued for months to flout the Court's order and the multiple warnings. Maliciously, and only to appear in compliance with the Order, Mr. Schmidt returned some of the Equipment just prior to the most recent hearing held by the Court in this case on December 9, 2024, nearly 8 months after the Court issued the Order. See Exhibit 1. The Equipment he returned, among other things, did not include the Recorders which is significant for the reasons discussed below.

After demands to comply with the Court's Order, four days before the December 9 hearing, counsel for Netwatch, Joseph Perl, sent counsel for the Defendants', Joseph Connors, another demand to return the equipment and specified that the Recorders were the key items that needed to be returned. Mr. Perl confirmed that it was solely those three Recorders that needed to be returned. See Exhibit 2, Affidavit of Joseph Perl and Exhibit 3 for a copy of the relevant emails. Only on December 9 did Mr. Connors state that some of the equipment had been returned. It was not an accident that Mr. Schmidt did not include the Recorders among the equipment he returned, and that he only returned items that he knew were unimportant to Netwatch.

Mr. Schmidt then compounded the problem by lying and saying that the Recorders were hard to access because they were in a high up place. Exhibit 2. Mr. Connors conveyed this message to Mr. Perl on the day of the December 9 hearing. Exhibit 2. Mr. Schmidt presumably

didn't know at the time he said this that Netwatch was able to see, through some of the unreturned cameras that were still monitoring the property, that the Recorders were sitting on a rack, waste high, and were easily accessible to Mr. Schmidt. See Exhibit 2 and Exhibit 4 for a photo of where the Recorders are. The Recorders can be seen on the black rack on the back wall. There was no difficulty for Mr. Schmidt to have simply mailed the Recorders back to Netwatch. When Mr. Perl sent an email to Mr. Connors on December 9 asking for confirmation about why Mr. Schmidt wasn't returning the Recorders, there was no response.

In sum, for eight months Mr. Schmidt has been violating this Court's order to return the Equipment.

**DISCUSSION**

To prove civil contempt, a movant must show with clear and convincing evidence that "(1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order." AngioDynamics, Inc. v. Biolitec AG 946 F.Supp 205, 212 (2013) (quoting Hawkins v. Dept. of Health and Human Serv., 665 F.3d 25, 31 (1st Cir. 2012)).

It is not in dispute that Mr. Schmidt has had repeated notice of the Order. His counsel was at the hearing in which the Order was issued, and the Court told Mr. Connors on multiple occasions to inform his client of the seriousness of the Order. The Order is clear and unambiguous, and Mr. Schmidt has had the ability to comply with the Order.

Courts can craft civil contempt sanctions either to coerce compliance with the court's order. AngioDynamics, Inc. at 214. A trial court has wide discretion in its choice of sanctions. This is particularly true when the court is attempting to coerce compliance. Id. Mr. Schmidt will have the "keys to his prison in his own pocket". Id. Mr. Schmidt can have the arrest warrant

lifted (or imprisonment ended) as soon as the Court is satisfied that he has complied with the Order to the extent he has the ability to do so. Id. Netwatch requests that the Court issue an arrest warrant and that the Court request that the Marshalls ensure that the warrant is effectuated so that Mr. Schmidt is brought before the Court to answer why he should not be held in contempt for violating the Order.

Netwatch requests that if Mr. Schmidt is held in contempt, that the Court order his incarceration until he shows the Court that he has complied with the Order to the best of his ability.

WHEREFORE, Netwatch respectfully requests that the Court Order Mr. Schmidt to be brought before the Court to answer why he should not be held in contempt, and that if the Court finds Mr. Schmidt in contempt, that the Court order his incarceration until he shows the Court that he has complied with the Order to the best of his ability. A proposed Order directed to Mr. Schmidt is attached.

Respectfully submitted,

/s/ Joseph Perl
Attorney for Plaintiff
B.B.O. 680509
203 Arlington St., Suite 2
Watertown, MA 02472
781-704-7047
perl@perlattorney.com
December 19, 2024